United States District Court
Southern District of Texas
**ENTERED**
April 01, 2025
Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| EDMUND HEIMLICH, | § | |
| | § | |
| **Plaintiff,** | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-3951 |
| | § | |
| UNITED STATES, *et al.*, | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## **ORDER**

Pending before this Court are approximately forty-two motions, successive pleadings, and letters filed by Plaintiff Edmund Heimlich ("Plaintiff" or "Heimlich"), as well as numerous motions to strike and dismiss filed by assorted defendants. (collectively, "Defendants"). Since Plaintiff has never sought leave to amend his pleading, despite the Federal Rules of Civil Procedure requiring him to do so, the Court **STRIKES** Plaintiff's numerous attempts to add defendants through successive complaints, interpleader actions, and joinder motions without leave of Court. (Doc. Nos. 30, 35, 51, 74, 81, 85, 86, 94, 109, 131, 132, 138, 139, 141, 155, 156). Having considered the various motions to dismiss filed by defendants, *see* (Doc. Nos. 54, 59, 61, 78, 99, 159, 161, 163, 164), the Court **DISMISSES** the case for lack of subject matter jurisdiction.

### I.     Background

The allegations contained in Plaintiff's assorted complaints and amended pleadings are not entirely clear or consistent. As best the Court can tell, the underlying facts that Plaintiff relies on concern the conduct of the probate judges and court-appointed administrators involved in the estate of Plaintiff's late father. Based on the statements in various pleadings and motions, the Court understands the facts alleged to be as follows.

In June 2021, Plaintiff filed an application to become the administrator of his deceased father's estate. (Doc. No. 99-1). Apparently, Plaintiff's father died without a will. The state probate court then appointed Defendant David Cook as administrator of the estate with authorization to sell the decedent's property. (Doc. No. 99-2). Defendant Cook then filed an inventory, appraisal, and a list of claims identifying the decedent's property that would be subject to probate. (Doc. No. 54-1). This property inventory included a home located in Katy, Texas. Later that year, the probate court signed an Order for the Sale of Real Property which included the Katy, Texas house. (Doc. No. 99-4). In February 2022, Defendant Cook filed a Withdrawal of First Report of Sale of Real Property stating that the contract for sale had expired and the buyer, Edmund Heimlich, had failed to comply with the contract's terms. (Doc. No. 99-6).

Based on Plaintiff's conduct throughout the course of the probate matter, the Texas probate court signed and entered an order declaring Plaintiff to be a vexatious litigant pursuant to Chapter 11 of the Texas Civil Practices and Remedies Code. *See* (Doc. No. 54 at 3). A few weeks later, Plaintiff filed a federal complaint in the United States District Court for the Southern District of Ohio, which was then transferred to this Court. (Doc. No. 6). Plaintiff's amended pleading, (Doc. No. 5), is a 45-page document that alleges claims against court-appointed administrators Suzan Kornblitt (*Id.* at 13) and David Cook (*Id.* at 14), and defendant judges Jerry Simoneaux (*Id.* at 21) and Michael Newman (*Id.* at 19).

Plaintiff seems to allege Defendants Cook and Kornblitt breached their fiduciary duties to the Estate of his father through their conduct, though he does not explain in any detail what that conduct is. The conduct that Plaintiff does refer to seems to be the execution of orders from the probate judges. Plaintiff further alleges that Cook breached a contract by not selling Plaintiff his father's house after he assigned the purchase contract to a third-party. (*Id.* at 18). He does not

allege what the terms of the contract were, and merely states that by not selling the house to Plaintiff, Cook breached a purchase agreement.

Next, Plaintiff alleges that Judges Newman and Simoneaux were "grossly negligent" when presiding over his father's probate matter—namely, by appointing Kornblitt and Cook as administrators of the estate instead of him. (*Id.* at 20). Plaintiff also alleges that the Defendant judges do not have immunity for two reasons: (1) because their conduct related to his application to be the administrator, and not as an arbiter of a dispute between parties, (*Id.* at 22); and (2) because the *Rooker-Feldman* Doctrine does not apply when a plaintiff "made claims of fraud and misrepresentation in federal district court against the attorney defendants involved in the case." (*Id.* at 24).

Perhaps in an effort to support his assertion of federal jurisdiction, Plaintiff also alleges that this case is "first and foremost, a case for deprivation of Human Rights" protected by "The Organic Law of July 4, 1776 . . . ratified by a BLOOD SACRIFICE." (Doc. No. 5 at 27). Plaintiff's claim seeks to "enforce" the "International Covenant on Civil and Political Rights." (*Id.* at 28). Under this treaty, Plaintiff claims that the Report and Recommendation filed by the Magistrate Judge for the Southern District of Ohio[1] "effectively states that Mr. Heimlich is not a person who is equal to the creatures of law that are the artificial person known as the United States, the artificial person known as The State of Texas, and the persons holding titles created by law to designate positions of public trust such as Judge or Court Officer (Attorney/Lawyer)." (*Id.* at 31). Finally, Plaintiff alleges that his civil rights have been violated by the Defendant judges' failure to be bound

---

[1] Plaintiff originally filed suit in the U.S. District Court for the Southern District of Ohio. In that court, a U.S. Magistrate Judge authored a Report and Recommendation stating that the case should be dismissed under the *Rooker-Feldman* Doctrine or, at the very least, transferred to the Southern District of Texas. (Doc. No. 3). The District Judge adopted the report and recommendation in part and the case was transferred to this Court.

by the United States Constitution. By deeming him a vexatious litigant, Plaintiff alleges that the probate courts have violated Civil Rights Act of 1866, and the Ku Klux Klan Acts of 1871 and 1875. (*Id.* at 33–37).

In addition to his Complaint (Doc. No. 1-1), and the "supplement" that the Court construes as his First Amended Complaint, (Doc. No. 5), Plaintiff has filed approximately fifteen successive pleadings against numerous new defendants. *See,* (Doc. Nos. 30, 35, 51, 74, 85, 86, 92, 93, 94, 109, 131, 132, 138, 139, 156). Most of these filings were done without leave and are simply titled "interpleader" or "joinder," but without laying out the procedural requirements for each and explaining how the underlying requirements of these statutes are met. For example, regarding the "interpleader" filings, Plaintiff fails to explain what money or property he possesses and how that money or property is at issue or what property or funds he is attempting to interplead into the registry of the Court—statutory requirements to establish his right to interplead under 28 U.S.C. § 1335. *See, e.g.,* (Doc. No. 74). Rather, in many of these filings he claims that the new defendants possess money that he deserves. Similarly, in the "joinder" filings, Plaintiff typically makes one or two conclusory sentences stating that the new defendant is "necessary for full relief," without explanation as to why. *See, e.g.,* (Doc. No. 156).

The several motions to dismiss have varying arguments for dismissal, both universal to all defendants and specific to each movant. Nevertheless, the arguments made have uniformly contended that Plaintiff has not adequately stated a claim on which relief can be granted and challenged the basis for the Court's subject matter jurisdiction. *See, e.g.,* (Doc. No. 161 at 9).

## II.    Legal Standard

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule

4

12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 609 F.3d 673, 675 (5th Cir. 2007). The court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678-79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III.     Analysis

The primary question for this Court is whether subject matter jurisdiction is precluded by either the "Probate Exception" to jurisdiction or the *Rooker-Feldman* Doctrine. Finding that both doctrines apply, the Court is without subject matter jurisdiction to grant Plaintiff the relief he seeks.

#### A. The Probate Exception

The United States Supreme Court has held that while federal courts may have jurisdiction over some probate-adjacent matters, federal courts cannot "interfere with the probate proceedings

or assume general jurisdiction of the probate or control the property in the custody of the state court. *Markham v. Allen*, 326 U.S. 490, 494 (1946). Clarifying the "interference" language from *Markham*, the Supreme Court has stated:

> "The probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court."

*Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006). The question is whether Plaintiff is asking this Court to disturb the probate court's disposition of property and administration of the estate.

Plaintiff's claim against Cook is plainly barred by the Probate Exception. Plaintiff's Complaint raises identical arguments against Cook for breach of contract as were raised in the state court, which was dismissed. Further, the home that Plaintiff argues should have been sold to him is within the probate court's *in rem* jurisdiction, and any of the relief requested from this Court would plainly contradict the state probate court's administration of the estate.

Regarding Plaintiff's claims against the judicial defendants, it is difficult to pinpoint the relief Plaintiff seeks from this Court. Nevertheless, his pleading does directly ask the Court to find that the state probate judges were "grossly negligent" in their administration of the estate. (Doc. No. 5 at 20). Plaintiff also alleges that these judges were part of a conspiracy with the appointed administrators to violate Plaintiff's civil and human rights in some unspecified way. These statements alone, however, are insufficient to establish that the relief Plaintiff seeks is not merely a collateral attack on their administration of the property in question. Plaintiff asks for monetary relief from the administrators of the property based on a claimed right to his father's estate, and for the Court to appoint Plaintiff as the rightful administrator of the estate. These remedies would plainly constitute interference with assets either formerly or currently within the probate court's *in rem* jurisdiction, precisely the sort of remedy that federal courts cannot do under *Marshall*. Any

issues that Plaintiff has with the conduct of the state probate courts are rightfully challenged through the state court appellate process. As such, the Court finds that the probate exception applies, and it has no subject matter jurisdiction over Plaintiff's claims.

   *B.* Rooker-Feldman *Doctrine*

As with the Probate Exception, the *Rooker-Feldman* Doctrine also precludes this Court from exercising jurisdiction over this case. The *Rooker-Feldman* Doctrine divests federal district courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 283 (2005) (citing *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). "[T]he *Rooker-Feldman* doctrine generally applies only where a plaintiff seeks relief that directly attacks the validity of an existing state court judgment." *Weaver v. Tex. Cap. Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011).

Under 28 U.S.C. § 1257, the United States Supreme Court has exclusive jurisdiction to review final judgments or decrees entered by the highest court of a state. As such, "federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar*, 18 F.3d 315, 317 (5th Cir. 1994)). Accordingly, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005 (1994).

Finally, and importantly, making conclusory allegations of civil rights or federal constitutional violations alone is insufficient to overcome the *Rooker-Feldman* bar to jurisdiction.

7

"The casting of a complaint in the form of a civil rights action cannot circumvent this rule as, absent a specific delegation, federal district courts . . . lack appellate jurisdiction to review . . . orders of state courts." *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994) (cleaned up). Likewise, "[c]onstitutional questions arising in state proceedings are to be resolved by the state courts. If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court." *Id.* As such, even if Plaintiff was able to state a valid civil rights or constitutional violation in his pleadings, the *Rooker-Feldman* Doctrine would nevertheless require those claims to be pursued in the proper state court appellate process.

As with the claims against the defendant judges, Plaintiff's claim against Kornblitt is precluded. Plaintiff argues that fees charged by Kornblitt, as the court-appointed guardian of his father prior to his death, were excessive. Without considering the merits of his argument, Kornblitt's fees were approved by the probate court. As such, any concern that Plaintiff has with the amount of fees charged by Kornblitt are subject to a final order from a state probate and may only be challenged through the appropriate state appellate process.

Plaintiff argues that *Rooker-Feldman* does not apply when a plaintiff "made claims of fraud and misrepresentation in federal district court against the attorney defendants involved in the case." (Doc. No. 5 at 24). Whether or not that is true as a matter of law, Plaintiff's claims are not against an opposing counsel, they are against the probate courts and the court-appointed estate administrators. The actions of the administrators, while not actions of the courts themselves, were based on orders issued by the probate courts relating to the distribution of the estate's assets. Thus, Plaintiff seeks to undo orders and judgments entered by the probate courts—the very thing *Rooker-Feldman* prohibits. Since the Court understands Plaintiff's pleadings to be essentially a collateral

attack on a state court judgment that occurred before Plaintiff's federal complaint was filed, Plaintiff's suit is barred from federal consideration under the *Rooker-Feldman* Doctrine.[2]

### IV.   Conclusion

Based on the foregoing analysis, the Court: (1) **STRIKES** all of Plaintiff's successive pleadings filed without leave of Court; (2) finds that the only claims adequately pleaded are barred by the Probate Exception and the *Rooker-Feldman* Doctrine; and (3) **DISMISSES** Plaintiff's Amended Complaint without prejudice for lack of subject matter jurisdiction.

Signed this _2-8_ day of March, 2025.

Andrew S. Hanen
United States District Judge

---

[2]     Even if Plaintiff was able to overcome the *Rooker-Feldman* bar, Plaintiff has not responded adequately to the individual defendants' arguments based on the lack of complete diversity, the *Younger* Abstention Doctrine, judicial immunity, qualified immunity, and sovereign immunity.